IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00779-PAB-NYW

JUDITH SARNELLA,

Plaintiff,

v.

ERIC KUHNS,
PHILLIP MEDLIN, and
JEFFERSON COUNTY SHERIFF DEPARTMENT,

Defendants.

**DEFENDANTS' MOTION TO DISMISS**

Pursuant to FED. R. CIV. P. 12(b)(6), Defendants the Jefferson County Sheriff's Department and Deputy Sheriffs Eric Kuhns and Phillip Medlin (the "Department," "Dep. Kuhns," and "Dep. Medlin," respectively; collectively, "Defendants"), through counsel, move to dismiss the Complaint and Jury Demand (the "Complaint") [ECF No. 1]. Counsel for Defendants conferred with opposing counsel and provided Defendants' position regarding the Complaint's deficiencies. Plaintiff's counsel indicated he would consider dropping the Department but did not confirm prior to the filing deadline; Plaintiff's counsel opposes the rest of the Motion.

**Overview**

Plaintiff Judith Sarnella as personal representative for the Estate of Deovalente Sarnella (the "Estate") filed this action on April 4, 2018, alleging claims for relief stemming from Mr. Sarnella's death on September 2, 2015, from "anoxic encephalopathy secondary to cardiac arrest consistent with the impact of methamphetamine toxicity." (Compl., ¶ 30.) The Complaint's

claims are captioned as "Federal Claims – Section 1983 Violation – Negligence," "Federal Claims – Section 1983 Violation – Wrongful Death," and "Federal Claims – Section 1983 Violation." (Compl. at 5-7.) Defendants were served on May 24, 2018. [ECF No. 11.]

Prior to the initiation of this lawsuit, the Estate filed essentially the same complaint in Civil Action No. 1:17-cv-02126-WYD-STV on September 5, 2017.[1] Defendants moved to dismiss that case for insufficient process and insufficient service of process. (*See* **Exhibit B**, Defendants' February 12, 2018 Motion to Dismiss for Insufficient Process and Insufficient Service of Process [Doc. 16].) On March 23, 2018, the Honorable Wiley Y. Daniel dismissed the case without prejudice. (*See* **Exhibit C**, Order on Motion to Dismiss [Doc. 29].) For the reasons below, the Court must deny the Estate's attempt to revive the action and dismiss this case.

## Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegation within the four corners of the complaint after taking those allegations as true."[2] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausible" cannot mean "likely to be true," but rather "must refer to the scope of the allegations in the complaint: if they are so general that they

---

[1] Somewhat confusingly, the documents Defendants received appear to be copies of the complaint from the prior case, as evidenced by the fact that the complaints are dated September 5, 2017. However, the Complaint filed with this Court and the copies of the complaint served on Defendants appear indistinguishable except for the date discrepancy. This Motion responds to the complaint served on Defendants, a copy of which is attached as **Exhibit A**.

[2] Defendants make no representation as to the veracity of the factual allegations in the Complaint but treat them as true for the limited purpose of this Motion.

encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line for conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## Argument

The Complaint titles each of its three claims as federal law violations brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). In substance, however, the claims appear to be a state law negligence claim, a state law wrongful death claim, and an indeterminate claim for a violation of Sarnella's constitutional rights.[3] (*See* Compl., ¶¶ 41-55.) The Court must dismiss the Complaint for several reasons. First, the Estate cannot bring claims against the Department because the Department is not a proper, suable entity. Second, because the Estate's state law claims are both premised on Sarnella's death, they are creatures of statute brought pursuant to Colorado's Wrongful Death Act. Because Colorado's revival statute does not apply to these claims, they are time-barred. Third, the Court must dismiss the constitutional claim regardless of whether it is stated as an individual or official capacity claim. If the Estate's claim is against the Deputies in their individual capacities, the Deputies are entitled to qualified immunity because their conduct did not violate any clearly-established constitutional right. Similarly, any official capacity claim must be dismissed because the Estate has not alleged a basis for municipal liability.

## I. The Jefferson County Sheriff's Department is not a proper, suable entity.

As a preliminary matter, the Estate names the Department as a defendant in this case, even though the Department is not a proper legal entity capable of being sued. Both the Tenth

---

[3] In his Order on the Motion to Dismiss in the prior case, Judge Daniel tentatively identified this claim as "what appears to be an Eighth Amendment claim." *Sarnella v. Kuhns*, Civ. Act. No. 17-cv-02126-WYD-STV, 2018 WL 1444210, at *1 (D. Colo. March 23, 2018); **Ex. C** at 1.

Circuit and this Court have repeatedly concluded that law enforcement agencies are not separate legal entities and have dismissed claims asserted against police departments and sheriffs' offices. *See Lindsey v. Thomson*, 275 F. App'x 744, 747 (10th Cir. 2007) ("Sheriffs' departments and police departments are not usually considered legal entities subject to suit[.]") (citations omitted); *Fofana v. Jefferson Cty. Sheriff's*, Civ. Act. No. 11-cv-00132-BNB, 2011 WL 780965, at *2 (D. Colo. Feb. 28, 2011) ("Further, Mr. Fofana may not sue the Jefferson County Sheriff's Office or Jail because they are not entities separate from Jefferson County and, therefore, are not persons under 42 U.S.C. § 1983.") (citations omitted); *Stump v. Gates*, 777 F. Supp. 808, 815 (D. Colo. 1991) (dismissing a claim against the Greenwood Village Police Department because it is not a separate suable entity and collecting cases dismissing claims asserted against law enforcement departments for this reason); *Renalde v. City & Cty. of Denver*, 807 F. Supp. 668, 675 (D. Colo. 1992) ("A police department is not a suable entity."). Because Colorado law does not recognize a sheriff's department as a separate legal entity capable of being sued, the Department must be dismissed. Additionally, although it is not clear that the Estate seeks to bring official capacity claims against the Deputies, a claim against the Department would be duplicative of such claims, as discussed in Section IV, *infra*.

**II.     Colorado's revival statute does not apply to the Estate's wrongful death claim, which is time-barred.**

The Colorado Wrongful Death Act, codified at COLO. REV. STAT. §§ 13-21-201 to -204 (the "Act"), is the sole means by which the Estate can bring its state law negligence and wrongful death claims related to Sarnella's death. *See Aberkalns v. Blake*, 633 F. Supp. 2d 1231, 1234 (D. Colo. 2009) ("The Wrongful Death Act allows a decedent's heirs to recover damages

4

from a tortfeasor whose tortious activity caused the decedent's death."). COLO. REV. STAT. § 13-21-202 provides that,

> When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured.

Because wrongful death claims "did not exist at common law and even today are considered creatures of statute," they are "subject to the limitations imposed in the Wrongful Death Act." *Aberkalns*, 633 F. Supp. 2d at 1234 (citing *Taylor v. Welle*, 352 P.2d 106, 108-09 (Colo. 1960); *DiCicco v. Trinidad Area Health Assoc.*, 573 P.2d 559, 561-62 (Colo. App. 1977)).

Notably, the Act contains a two-year statute of limitations. *See* COLO. REV. STAT. § 13-21-204 (incorporating by reference mandate that two-year statute of limitations applies "regardless of the theory upon which suit is brought" to "[a]ll actions for wrongful death" from COLO. REV. STAT. § 13-80-102(1)(d)). Because the "substance of the right infringed, not the specific legal theory of recovery determines the nature of the action," the Act governs any state law claim the Estate brings. *Aberkalns*, 633 F. Supp. 2d at 1234, 1236 ("Plaintiff's right to sue only came into existence upon [decedent's] death . . . The mere fact that Plaintiff has permeated his wrongful death action with other claims couched in the more traditional tort fields of negligence . . . does not remove these claims from the umbrella of the Wrongful Death Act").

Nor can the Estate rely on Colorado's revival statute, COLO. REV. STAT. § 13-80-111, as this Court's decisions in *Ritter v. Aspen Skiing Corp.*, 519 F. Supp. 907, 908 (D. Colo. 1981), *Nelson v. Hall*, 573 F. Supp. 1097 (D. Colo. 1983), and *Aberkalns*, 633 F. Supp. 2d 1231, make clear. In *Ritter*, plaintiff brought a claim against Aspen Skiing Corporation, alleging that the

negligent operation of its resort caused decedent's death. 519 F. Supp. at 907.[4] Plaintiff initiated the negligence action roughly three years after decedent's death. *Id.* Dismissing the case based on plaintiff's untimely filing, the court held that Colorado's revival statute did not apply. "The reasoning is that wrongful death statutes create a new liability . . . . As such, it is not a statute of limitations, but a statute of creation; thus the commencement of the action within the time fixed is an indispensable condition of liability." *Id.* at 908 (citing Eighth and Ninth Circuit cases). Because "whatever right a plaintiff has to bring a wrongful death action is based solely on the wrongful death statute," the two-year time limit is dispositive of late-filed claims. *Id.*

Similarly, in *Nelson*, plaintiffs sued on behalf of their daughter, who was killed in an automobile accident in 1977. 573 F. Supp. at 1097. Plaintiffs originally sued in Missouri before filing an action in Colorado in 1982. *Id.* at 1098. Plaintiffs argued the five-year delay in filing was immaterial because Colorado's revival statute tolled the two-year period in which one must bring a wrongful death action. *Id.* The court found Colorado's revival statute did not apply to claims brought under the Act and, reiterating its holding in *Ritter*, found the wrongful death claim untimely. *Id.* at 1098-99. Because the Missouri lawsuit was still pending when plaintiffs filed their action in Colorado, however, the court stayed the case rather than dismissing it. *Id.*

Finally, in *Aberkalns*, decedent's son sued the driver of the semi-truck that killed his father. 633 F. Supp. 2d at 1232. The fatal accident occurred in 2005; plaintiff did not file his action until 2008. *Id.* Plaintiff argued that the suit was timely under COLO. REV. STAT. § 13-80-

---

[4] Colorado's revival statute was repealed and reenacted in 1986. As a result, decisions before 1986 reference COLO. REV. STAT. § 13-81-128, which differs from COLO. REV. STAT. § 13-80-111 in two respects. First, the 1986 statute permitted refiling within a year of termination of the original action instead of the current refiling period of ninety (90) days. Second, the 1986 statute authorized a decedent's "executor or administrator" to sue; the current iteration authorizes the "personal representative."

101(1)(n)(I)'s three-year statute of limitations applicable to tort claims arising from motor vehicle accidents. *Id.* at 1233. Defendant argued that the Act's two-year statute of limitations barred the case. *Id.* The court agreed with defendant and dismissed the case, holding that "to survive a dispositive motion based on the statute of limitations, an heir must commence a wrongful death action within two years of the date of death." *Id.* at 1235.

Mr. Sarnella died on September 2, 2015. As a result, the Act's two-year statute of limitations required the Estate to bring its state-law claims on or before September 2, 2017. Although the Estate timely filed Civil Action No. 1:17-cv-02126-WYD-STV, Judge Daniel's dismissal of that case (*see* **Ex. C** at 4, 6-7) served as a final adjudication of these claims. When the Estate filed this action, the state law claims were untimely by nearly seven months. As a result, the Court must dismiss the Estate's state law negligence and wrongful death claims.

**III.     The Deputies in their individual capacities are entitled to qualified immunity for any constitutional claim against them.**

The Court must also dismiss the Estate's constitutional claim because the Deputies in their individual capacities are entitled to qualified immunity unless their conduct violated a clearly established constitutional right. *Inman v. Stock*, 248 Fed. App'x 892, 894 (10th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citations and internal quotations omitted); *accord Mullenix v. Luna*, 136 S. Ct. 305, 308 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability.'" *Pearson*, 555 U.S. at

237 (quoting *Mitchell v. Forsyth*, 427 U.S. 511, 526 (1985)) (emphasis in *Mitchell*). Courts "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier*, 533 U.S. at 201 (quotation omitted).

"Once a defendant pleads qualified immunity, the plaintiff initially bears a heavy two-part burden." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) (citations omitted). Plaintiff must establish that the Deputies' conduct violated a constitutional right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 200-01. However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*; *cf. Pearson*, 555 U.S. at 236 (holding a court may review prongs in any order, using its discretion based on a case's facts). Because the Estate has failed to allege a constitutional violation or that the right violated was clearly established at the time of this incident, the Court must dismiss the claim against the Deputies in their individual capacities.

### A. The Estate has failed to allege that the Deputies violated Sarnella's constitutional rights.

The Estate alleges that the Deputies deprived Sarnella of "his life which is his right and privilege guaranteed under federal law or the U.S. Constitution." (*See* Compl., ¶ 53.) Although the Complaint fails to allege the specific constitutional basis for this claim[5] and therefore

---

[5] As noted in Footnote 3, *supra*, the allegations are so vague that Judge Daniel construed this claim as an Eighth Amendment claim.

8

arguably fails to state a plausible claim for relief, Defendants construe this claim as an excessive force claim based on the Fourth Amendment's prohibition against unreasonable seizures. U.S. CONST. AMEND. IV; *accord Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989), for the holding that the courts "treat excessive force claims as seizures subject to the reasonableness requirement of the Fourth Amendment").

"To establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable," which "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 1260 (quoting *Graham*, 490 U.S. at 395). This is especially true because "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Saucier*, 533 U.S. at 205 (quoting *Graham*, 490 U.S. at 397). Peace officers can use force to detain an individual, especially where the individual resists or otherwise acts in a manner that puts officers in fear for their safety or the safety of others. *See, e.g., Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) ("In *Graham*, the Court noted that the Fourth Amendment recognizes the right of the police, in making an arrest or a stop, 'to use some degree of physical coercion or threat thereof to effect it.'") (internal citations omitted). While a detainee's mental health is part of the factual circumstances a court considers in assessing the reasonableness of the force used, the Fourth Amendment does not prohibit officers from using a minimal amount of force when dealing with impaired individuals. *See Waters v. Coleman*, 632 Fed. App'x 431, 436-37 (10th Cir. 2015) (citing *Phillips v. James*, 422 F.3d 1075, 1081, 1083 (10th Cir. 2005) (upholding use of force

against a man taking antidepressant medication); *Giannetti v. City of Stillwater*, 216 Fed. App'x 756, 762-66 (10th Cir. 2007) (upholding use of force against a woman with mental health problems); and *Weigel v. Broad*, 544 F.3d 1143, 1148, 1155 (10th Cir. 2008) (upholding the initial use of force against a detainee who was apparently intoxicated and behaving bizarrely)). Grabbing and handcuffing individuals to restrain them both qualify as *de minimis* uses of force. *See Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997) (grabbing person's arm was "a relatively minor application of force"); *United States v. Rodella*, 804 F.3d 1317, 1327 (10th Cir. 2015) (citing numerous Tenth Circuit cases for the holding that excessive force claims related to handcuffing require proof of an actual injury that is not *de minimis*). Even with *de minimis* uses of force, "[i]injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

But for the conclusory allegation that the Deputies deprived Sarnella of his right to life, the Estate has almost completely failed to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," as required by FED. R. CIV. P. 8(a)(2). *See Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As a result, a robust qualified immunity analysis is difficult. Accepting as true the facts that can be gleaned from the allegations, however, the Estate has failed to meet the threshold plausibility pleading requirement, let alone allege a constitutional violation.

The Estate alleges that the Deputies were dispatched to conduct a welfare check. (Compl., ¶ 2.) When Dep. Kuhns contacted Sarnella, he "exhibit[ed] unusual behavior" (*id.*, ¶ 6), although he returned to his home at Dep. Kuhns' request (*id.*, ¶ 7-8). Dep. Medlin arrived on

scene after Dep. Kuhns and Sarnella had entered Sarnella's home and joined the two other men in the home. (*Id.*, ¶ 8-9.) When Sarnella reached into a cabinet, the Deputies restrained him, "not knowing what was in the cabinet." (*Id.*, ¶ 11.) After restraining Sarnella, the Deputies took him outside and put him on the ground in the grass. (*Id.*, ¶ 15.) Based on Sarnella's unusual behavior, the Deputies called an ambulance, which arrived shortly before Sarnella passed away from "cardiac arrest consistent with the impact of methamphetamine toxicity." (*Id.*, ¶ 17-18, 20, 30.)

While inarguably tragic, the fact that Sarnella died of cardiac arrest secondary to a methamphetamine overdose does not mean that the Deputies are liable for his death. As the Supreme Court has made clear, it is plaintiff's burden "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Plausible" cannot mean "likely to be true," but rather "must refer to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line for conceivable to plausible.'" *Robbins*, 519 F. 3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

In this case, the Estate has alleged at best a *de minimis* use of force by the Deputies and that Sarnella's death was the result of a methamphetamine overdose – not an unreasonable application of force. Although sparse, the allegations involving the Deputies' actions make clear that the Estate has failed to allege a constitutional violation. Prompted by a neighbor's concerns regarding Sarnella's odd behavior and a request for a welfare check, the Deputies contacted Sarnella and were able to make their own observations of his ongoing "unusual behavior." (Compl., ¶ 2, 6, 11.) When Sarnella, who was acting erratically, reached into a cabinet in his home in an apparent attempt to retrieve an unknown object, the Deputies restrained him to

11

safeguard themselves and him. (*Id*., ¶ 11.) This *de minimis* use of force was not unreasonable considering the totality of the circumstances confronting the Deputies – an individual who was acting oddly based on observations of the Deputies on-scene and at least one neighbor who was familiar with him, perhaps because of a mental health condition but even more likely because of methamphetamine intoxication. Sarnella's odd behavior continued and he then reached into a cabinet in a way that made the Deputies concerned for their safety and that of Sarnella. As the Supreme Court in *Wilkins* observed, injury and force are "imperfectly correlated," especially in cases involving drug overdoses. Here, Sarnella's odd behavior may have signaled an already irreversible overdose event and certainly was the ultimate cause of his death. The Estate asks the Court to impute from Sarnella's death from a methamphetamine overdose unreasonableness in the Deputies' *de minimus* use of force to restrain him. This the Court cannot do; instead, it must dismiss this claim because of the Estate's failure to allege a plausible constitutional violation.

### B. The Estate has failed to allege a clearly-established prohibition against *de minimis* use of force against an allegedly mentally ill individual.

Even if the Court were to find that the Estate has plausibly alleged that the Deputies' use of force in restraining Sarnella violated his Fourth Amendment rights, the allegations fail to demonstrate that such a violation was clearly established at the time of this incident. As a result, the Court must dismiss this case even if it finds that the Deputies' *de minimis* use of force to restrain Sarnella violated his constitutional rights.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he was doing violates that right.'" *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Mullenix*, 136 S. Ct. at 308). This requires courts to examine whether the constitutional right was clearly established in "the context of the particular case

before the court, not as a general abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson*, 526 U.S. at 615), for the proposition that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established"). "Although overcoming a qualified immunity defense does not require a favorable case directly on point, "existing precedent must have placed the statutory or constitutional question 'beyond debate.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 536 U.S. at 741). "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (citing *Stewart v. Donges*, 915 F.2d 572, 582-83 & n.14 (10th Cir. 1990)).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality," *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 536 U.S. at 742), and has repeated and recently reversed decisions denying qualified immunity based on generalized formulations of the right at issue. "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)) (alternation original).

13

Here, the Estate's claim fails on two fronts. First, it has defined the right at issue – the "constitutionally guaranteed right to life" – far too generally. *See, e.g., Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (holding mentally ill individual did not have a clearly established right to be free from officers restraining him for medical treatment, even where individual subsequently died). Second, the Estate cannot point to a Supreme Court, Tenth Circuit, or District of Colorado case that clearly establishes such a right. Instead, as evidenced by the cases cited in Section III.A., *supra*, the Deputies' *de minimis* use of force to restrain Sarnella was not objectively unreasonable considering the totality of the circumstances. Because the Estate has failed to establish that the Deputies violated Sarnella's clearly-established constitutional rights through their *de minimis* use of force, the Court must dismiss this claim.

IV. **The Court must dismiss any official capacity claim against the Deputies because the Estate has failed to state a colorable municipal liability claim.**

The Estate's municipal liability claim summarily fails because it has not alleged a colorable constitutional violation against the Deputies in their individual capacities. *See, e.g., Estate of Ronquillo by and through Estate of Sanchez v. City & Cty. of Denver*, 720 Fed. App'x 434, 441 (10th Cir. 2017) ("Because we hold that there was no constitutional violation by the officers, Plaintiff's municipality claim also fails."). "[A]bsent a constitutional violation by the individual police officers whose conduct" was related to a plaintiff's injuries, "there can be no municipal liability." *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1156 (10th Cir. 2001). The Estate's failure to establish a constitutional violation by the Deputies precludes a municipal liability claim against them in their official capacities.

Even assuming the Court finds that the Estate has plausibly alleged a constitutional violation by the Deputies in their individual capacities, the Estate has failed to allege that a

policy, practice, or custom of the Sheriff caused Sarnella's death, which also requires dismissal of any municipal liability claim. To state a Section 1983 official capacity claim, is it is axiomatic that a plaintiff must allege that a policy, practice, or custom of the Sheriff was the moving force behind the constitutional violation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91, 694 (1978). A complaint must allege "more than labels and conclusions" and must contain more than "a formulaic recitation of the cause of action." *Twombly*, 550 U.S. at 554. Here too, the plaintiff "bears the burden to allege sufficient facts to support claims for relief that are plausible on their face." *Id.*, at 557; *Robbins*, 519 F.3d at 1247. There are no specific factual allegations in the Complaint to support either a policy-based or practice-based claim. The limited allegations in the Complaint fail to raise "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), against the Deputies in their official capacities or the Department and require dismissal.

## Conclusion

WHEREFORE, Defendants respectfully request that the Court dismiss the Complaint for the reasons set forth herein.

Respectfully submitted this 14th day of June, 2018.

JEFFERSON COUNTY ATTORNEY
ELLEN G. WAKEMAN, #12290

By: */s/ Rebecca Klymkowsky*
Rebecca Klymkowsky, #41673
Rachel Bender, #46228
Assistant County Attorneys
100 Jefferson County Parkway, Suite 5500
Golden, Colorado 80419
Telephone: 303.271.8932
Facsimile: 303.271.8901
rklymkow@jeffco.us; rbender@jeffco.us
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

  I hereby certify that on June 14, 2018, I filed the foregoing **DEFENDANTS' MOTION TO DISMISS** via the US District Court CM/ECF System, which will send a true and correct copy to the following:

Selvoy Fillerup
Crestone Law Group, LLC
selvoy@crestonelaw.com
*Attorney for Plaintiff*

            */s/ Briana McCarten*